# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WISCONSIN

## _____ DIVISION

| | |
|---|---|
| Najiy-Ullah 'Aziyz, | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| Cameca, a Wisconsin Profit | ) |
| Corporation; Steven Turnbull, Individually | ) |
| and in his Capacity as a Manager; Annie | ) |
| Stroud, Individually and in her Capacity as a | ) |
| Manager; and Fabrice LeDuigou, Individually | ) |
| and in his capacity as Manager, | ) |
| Defendants. | ) |

No.:

**20  CV  896  WMC**

## COMPLAINT AND JURY DEMAND

Plaintiff, Najiy-Ullah 'Aziyz, for his Complaint against Defendants Cameca Inc., Steven Turnbull, Annie Stroud and Fabrice LeDuigou, states as follows:

**Introduction**

1. This is an action to vindicate violations of the Plaintiff's civil rights and to redress the unlawful and discriminatory conduct and employment practices of the Defendants. This action arises out of the illegal and wrongful denial of employment to Plaintiff. Plaintiff alleges, inter alia, that he was denied a "Good Faith" job offer and employment based upon his race and age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; and The Fair Credit Reporting Act of 19xx, 15 U.S.C. Section 1681-1681x.

Plaintiff, Najiy-Ullah 'Aziyz (African-American male) (52 years old) (hereinafter "Plaintiff") on July 14, 2020 (10:00 AM) interviewed with Defendant Fabrice LeDuigou, (Field Service Manager) (white male) (hereinafter "Defendant LeDuigou"), for the Northeast Field Service Engineering position with Defendant Cameca Inc. (hereinafter "Defendant Cameca"). On or about July 20, 2020 Defendant Annie Stroud, (Human Resource Manager) (white female) (hereinafter "Defendant Stroud), offered Plaintiff the Northeast Field Service Engineering position. Plaintiff's first day of work and orientation at Defendant Cameca was scheduled for August 10, 2020.

However, on August 6, 2020 (9:28 AM), approximate one week after Plaintiff had successfully completed the terms of his job offer, background check and pre-employment drug screen, Defendant Stroud performed an internet search on the Plaintiff and discovered Plaintiff had been incarcerated. Defendant Stroud discovered criminal history about the Plaintiff which was outside the requirements of the background adjudication completed by HireRight, a consumer reporting agency. Defendant Stroud then proceed to informed Defendant LeDuigou, Plaintiff's future

manager, the specific details of Plaintiff's criminal history. In 1991 Plaintiff had pleaded guilty to a felony.

Defendant Stroud then proceeded with contacting the Plaintiff to inform him that the offer had been withdrawn until she contact and notify the corporate office. based on information and belief, Defendant Stroud proceeded to block all preparations for Plaintiff's orientation to be held on August 10, 2020. Defendant Stroud further stated to the Plaintiff, that when she informed Defendant LeDuigou he had become very upset with Plaintiff's performance in the interview because Plaintiff did not make it known that he had been incarcerated. Defendant Cameca have a policy requiring a 10-year background search. However, it is the common practice of Defendant LeDuigou to determine if applicants have a criminal history in the interview to exclude the applicants from the hiring process.

On August 7, 2020 (9:03 AM) Defendant Stroud calls Plaintiff to inform him that they can now proceed with orientation. Allegedly the job offer was reinstated. Plaintiff informed Defendant Stroud that she was wrong to withdraw the job offer and that she discriminated against him based on his race when she withdrew the job offer. Defendant Stroud did not respond. Plaintiff asked Defendant Stroud how does Defendant LeDuigou feel about working with him (Plaintiff) in the light of his (Defendant LeDuigou) knowledge of Plaintiff's criminal history and Defendant LeDuigou being angered. Defendant Stroud asked Plaintiff if he would like to speak with Defendant LeDuigou. Plaintiff agreed with the affirmative. On August 7, 2020 (9:19 AM) Defendant Stroud called Plaintiff for the second time stating that Defendant LeDuigou is free all day and asked plaintiff it would be okay to set-up a chat between the three. Plaintiff agreed with the affirmative.

On August 7, 2020 (9:21 AM) Plaintiff receive an invite chat from Defendant Stroud. On August 7, 2020 (9:51 AM) Plaintiff received a cancellation chat from Defendant Stroud. On August 7, 2020 (10:16 AM) Plaintiff receives an email from Defendant Stroud stating that the meeting with Defendant LeDuigou will not work out. Upon

information and belief Defendant Stroud did not resume the preparations for plaintiff's orientation to be held on August 10, 2020. Defendant Stroud, for dishonest and discriminatory purposes, failed to reinstate plaintiff's job offer.

On or about August 7, 2020 Defendant Steven Turnbull, (Vice President of Human Resources) (hereinafter "Defendant Turnbull") consulted with Defendant Stroud and their legal team and deemed it was in their best interest to hypothetically reinstate the job offer to the Plaintiff, and challenge the narrative of the events to avoid liability.

On August 7, 2020 (2:20 PM) Defendant Turnbull contacted Plaintiff and apologized for the events that had occurred during Plaintiff's transitioning to Defendant Cameca. However, Defendant Turnbull struggled to change the narrative of events between Defendant Stroud and Defendant LeDuigou. Defendant Turnbull asserted that Defendant Stroud reviewed the background report completed by HireRight and determined that Plaintiff's age did not coincided with his work history and graduation date. Upon information and belief Defendant Stroud determined the report completed by HireRight had conflicting information. Upon information and belief Defendant Stroud determined that plaintiff would have had too much work history for the Field Service Engineering position thus, making him to old. The common practice of Defendants is to exclude applicants with lengthy work history from the hiring process. Defendant Turnbull continued to further assert in that phone call to Plaintiff that Defendant Stroud contacted Defendant LeDuigou with questions about Plaintiff's interview, and then Defendant LeDuigou did an internet search on the Plaintiff and became upset when he discovered plaintiff had a criminal history. Defendant LeDuigou then proceeded to inform Defendant Stroud of his findings.

Plaintiff, as an applicant, verbally reported to Defendant Turnbull in that same 2:00 PM phone call that Defendant Stroud was wrong to withdraw the job offer and her actions were discriminatory towards him (Plaintiff) based on his race. Likewise, Plaintiff verbally reported to Defendant Turnbull regarding his asserted narrative of events that they were discriminatory as well based on age discrimination. Moreover,

upon information and belief Plaintiff was never given a copy of the report outlining the conflicting information completed by HireRight, nor was plaintiff given the opportunity to respond to the allegedly conflicting information, and nor was plaintiff given written notice of the adverse action to be taken against him. Plaintiff assert that he could have corrected any misconceptions and/or inaccuracies regarding the HireRight report and prevented the adverse action. Defendant Turnbull conclude the phone conversation by stating to the Plaintiff, the job offer is his if he wants it. Upon information and belief defendant Turnbull, for dishonest and discriminatory purposes, attempted to change the narrative of events. Defendant Turnbull, for dishonest and discriminatory purposes, failed to reinstate plaintiff's job offer.

On August 7, 2020 (3:37 PM) Plaintiff receive an email from Defendant Turnbull stating how excited the Defendants were about Plaintiff joining the team. On August 8, 2020 (10:36 AM) Plaintiff respond to Defendant Turnbull via email raising the following concerns, (1) how can Defendants ensure to Plaintiff that he will not be targeted by Defendant LeDuigou, since he had become upset with Plaintiff's criminal history, or any other employee, (2) Is Defendant LeDuigou the only manager Plaintiff can work under, (3) Is there any other department Plaintiff can work in, and, (4) can the Defendants ensure the job offer is in "Good Faith". On August 9, 2020 (12:48 PM) Defendant Turnbull asserted in an email to Plaintiff that Defendant Cameca and all its employees adhere strictly to their "Code of Ethics and Business Conduct" Handbook.

The Defendants' "Code of Ethics and Business Conduct Handbook" clearly states that it would treat employees in a specific, fair and equitable manner; that all incidents of prohibited discriminatory that are reported will be investigated; that the company will immediately undertake or direct an effective, thorough, and objective investigation of the discriminatory allegations; and, that the Company will take effective remedial action commensurate with the circumstances". Based on information and belief, Defendant Cameca did not treat Plaintiff in a fair and equitable manner; Defendant Cameca did not investigate Applicant-Plaintiff's claims of discrimination; and, Defendant Cameca failed to take any effective remedial action to prevent

discrimination in the future. Defendants failed in its obligation to Plaintiff and breached its contract in the "Code of Ethics and Business Conduct Handbook. Moreover, based on information and belief, Defendants actions, predicated on bad faith made Plaintiff a job offer in "Bad Faith", a job offer they could not live up too. On August 10, 2020 (7:46 AM) Plaintiff's rejected Defendants "bad faith" job offer.

Plaintiff alleges that Defendant Cameca' hiring process, confidentiality of personnel records, the subsequent investigation of Defendants Stroud and Defendant LeDuigou for discriminatory actions, the pre-adverse/adverse action taken, and the job offer were tainted, biased and/or implemented in a dishonest and discriminatory manner. Upon information and belief, the hiring process has a significant disparate impact on African American applicants because greater than 10% of African American are prison although they only make up 4% of the population insofar as white employees obtain more favorable results in the company hiring process. Plaintiff further alleges that Defendant Cameca' hiring process has a significant disparate impact/treatment on applicants over 40 years of age insofar as younger applicants obtain more favorable results in the company hiring process.

As a result of the Defendants' unlawful and discriminatory conduct and employment practices and violations of Plaintiff's rights protected by federal law, Plaintiff was denied a "Good Faith" job offer and employment. Defendants' dishonest and discriminatory conduct thereafter denied Plaintiff a fair investigation as guaranteed by Defendant Cameca' "Code of Ethics and Business Conduct". Plaintiff now seeks injunctive relief; monetary damages, including back pay, front pay, if applicable, compensatory and punitive damages; and court costs, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil Rights Act of 1866, as amended, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A and 42 U.S.C. Section 1988; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981. ADEA Act of 1967, as codified, 29 U.S.C. §§ 621 to 634. The Fair Credit Reporting Act of 19xx, 15 U.S.C. Section 1681-

1681x. Plaintiff also brings tort and contract claims under the common law of Wisconsin.

## Parties

2. Plaintiff, Najiy-Ullah 'Aziyz, an African-American, is an adult male individual and citizen of the United States and the State of New York who resides at 22 Pinewood Dr. Glenville, NY 12302. At all relevant times, Plaintiff was 52 years old and was an applicant of Cameca Inc., within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq., and applicable case law.

3. Defendant, Cameca, is a corporation or similar business entity organized and existing under the laws of the State of Wisconsin and which regularly conduct business at Cameca Instruments Inc., 5470 Nobel Dr., Fitchburg, Wisconsin 53711. Defendant Cameca is a supplier of microanalytical and metrology instrumentation for basic research, product development and process control.

4. At all relevant times, Defendant Cameca employed in excess of fifteen employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.

5. Defendant, Steven Turnbull, a white male, is an adult individual and citizen of the United States who resides in Wisconsin. At all relevant times, Defendant Turnbull was the Vice President of Human Resources and a Managerial employee of Defendant Cameca.

6. Defendant, Annie Stroud, a white female, is an adult individual and citizen of the United States who resides in Wisconsin. At all relevant times, Defendant Stroud was the Human Resource Manager and a Managerial employee of Defendant Cameca.

7. Defendant, Fabrice LeDuigou, a white male, is an adult individual and citizen of the United States who resides in Wisconsin. At all relevant times, Defendant LeDuigou was the Service Manager and a Managerial employee of Defendant Cameca.

**Jurisdiction and Venue**

8. This is, in part, an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A; 42 U.S.C. Section 1988, and the common law of the State of Wisconsin.

9. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments. This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the common law and statutes of the State of Wisconsin, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367.

10. Venue is proper in the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. Section 1391(b), wherein all Defendants regularly conduct business and where all the wrongful conduct occurred.

**Administrative Prerequisites**

11. Plaintiff has complied with all the administrative prerequisites to action under Section
706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections
2000e-5 as follows:

    a.  On or about September 16, 2020 (18:36:21) plaintiff timely filed a formal
charge of discrimination with the Equal Employment Opportunity Commission
[hereinafter E.E.O.C.];

    b.  Plaintiff promptly and diligently accommodated all E.E.O.C. requests for
information and fully cooperated in the agency's investigation of this matter;

    c.  Plaintiff has exhausted all available administrative remedies in accord with the
aforementioned statues prior to instituting this Civil Action, and a Notice of
Right to Sue from the E.E.O.C. was issued on September 17, 2020.

12. No administrative prerequisites are required before a plaintiff files a complaint
pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Restoration
Act of 1991, 42 U.S.C. Section 1981.

**Event**

13. On or about July 14, 2020 Plaintiff had an interview with Defendant LeDuigou via zoom.

14. On or about July 20, 2020 Plaintiff was informed by Michael Lanahan (hereinafter "Lanahan"), that Defendant Cameca will be making Plaintiff a job-offer.

15. Lanahan is a Scientific Executive Recruiter at MRIGlobalScientific.

16. Plaintiff's initial first day will be Monday, August 3, 2020 with Defendant Cameca.

17. On or about July 20, 2020 Plaintiff received the formal offer letter from Defendant Stroud.

18. On or about July 20, 2020 Plaintiff informed Defendant Stroud that he could not resign from Micromeritics Instr. Corp. (hereinafter "Micromeritics") until he had satisfactory passed the background check and pre-employment drug screen.

19. Plaintiff was employed at Micromeritics as a Senior Field Service Engineer for the past six years.

20. Plaintiff's amended first day will be Monday, August 10th, 2020 with Defendant Cameca.

21. On or about July 20, 2020 Plaintiff initiates the HireRight process online.

22. Defendant Cameca request an investigative consumer report about Plaintiff from HireRight in connection with Plaintiff application for employment.

23. HireRight, LLC is a consumer reporting agency.

24. On or about July 27, 2020 Defendant Stroud inform Defendant LeDuigou the results of the Plaintiff's background check completed by HireRight.

25. On or about July 27, 2020 Plaintiff received an email from Defendant LeDuigou stating the following: "I am looking forward for your arrival next week in the Cameca service team. We won't be able to meet in person because I am traveling but you should be able to meet with the engineer who lives in Kingston NY. Due to Covid-19 travel is a bit challenging and everything takes much longer than expected. We will be providing you with a cell phone. Usually iPhone 11 (Samsung S10 is also available). Also, what is your area code presently? That way your cell phone number will have the area code of where you are."

26. On or about July 27, 2020 Plaintiff respond to Defendant LeDuigou stating the following, "Thank you for your email, and I look forward to joining the Service Team. However, for clarification it was my understanding that I would be starting August 10, 2020 and not next week. In regard to cell phone, the iPhone will be fine. The area code for Schenectady is 518."

27. On or about July 28, 2020 Plaintiff's background check and pre-employment drug screen is finalized by HireRight.

28. The Adjudication results completed by HireRight met Defendant Cameca standards.

29. On or about July 28, 2020 Plaintiff receives the all clear and welcome aboard email from Defendant Stroud.

30. On or about July 28, 2020 Defendant Stroud began the preparations for Plaintiff's orientation to be held on August 10, 2020.

31. On or about July 28, 2020 Defendant Stroud requested Plaintiff complete Federal Tax Form W4, State Tax Form, Direct Deposit Form, Ametek Work Opportunity Tax Credit, and Employee Information Form by August 4, 2020.

32. On or about July 30, 2020 Defendant Stroud ask Plaintiff did he have a preference in email.

33. On or about July 30, 2020 Defendant Stroud informed Plaintiff that his computer and phone will be mailed to his home prior to orientation.

34. On or about Aug. 6, 2020 Defendant Stroud discovered criminal information about the Plaintiff which was outside the requirements of HireRight's adjudication results.

35. On or about Aug. 6, 2020 Defendant Stroud disclose criminal information about the Plaintiff, which was outside the requirements of HireRight adjudication, to Defendant LeDuigou.

36. On or about Aug. 6, 2020 Defendant Stroud stated to the Plaintiff in a phone call that while she was performing an internet search, she discovered that Plaintiff had been incarcerated, and asked him to confirm.

37. On or about Aug. 6, 2020 Defendant Stroud stated to the Plaintiff in a phone call that Defendant LeDuigou was upset with Plaintiff.

38. Defendant LeDuigou had become upset with Plaintiff because Plaintiff had a criminal background.

39. Defendant LeDuigou had become upset with Plaintiff because plaintiff did not inform him during the interview process that he had been incarcerated.

40. Plaintiff's position as Field Service Engineer would report directly to Defendant
LeDuigou.

41. On or about Aug. 6, 2020 Defendant Stroud stated to the Plaintiff in a phone call that
she must inform the corporate office that Plaintiff had been incarcerated.

42. On or about Aug.6, 2020 Defendant Stroud stopped all preparations for Plaintiff's
orientation on August 10, 2020.

43. On or about July 1991 Plaintiff had pleaded guilty to a felony.

44. Defendant Cameca have a policy to conduct a 10-years background check.

45. At all times relevant, despite Defendant Cameca have a policy to conduct a 10-years
background check plaintiff alleges that the Defendants have a practice of screening out
felons during the interview stage.

46. Defendant Stroud reported to the corporate office that Plaintiff had been incarcerated
for a felony that occur over 25 years ago.

47. On or about Aug. 7, 2020 Defendant Stroud called Plaintiff to inform him they may
proceed with the orientation to be held on Monday August 10, 2020 per the corporate
office.

48. On or about Aug. 7, 2020 Plaintiff responds to Defendant Stroud in their phone call
stating that she was wrong for sharing Plaintiff's criminal information to the
Defendant LeDuigou, plaintiff's manager.

49. On or about Aug. 7, 2020 Plaintiff further explain to defendant Stroud during that call
stating that she had been discriminatory towards him.

50. On or about Aug. 7, 2020 Defendant Stroud asked the Plaintiff during the same call if he would like to speak with Defendant LeDuigou.

51. On or about Aug. 7, 2020 Plaintiff agreed to speak with Defendant LeDuigou regarding his anger towards Plaintiff.

52. On or about Aug. 7, 2020 Defendant Stroud called a second time stating that Defendant LeDuigou is free today and wanted to know what time was good for Plaintiff. Plaintiff told Defendant Stroud 11:00 AM.

53. Defendant Stroud also stated that Defendant LeDuigou wanted her to be on the call.

54. On or about August 7, 2020 Plaintiff receive an invite chat from Defendant Stroud.

55. On or about August 7, 2020 Plaintiff receive a cancellation chat from Defendant Stroud.

56. On or about August 7, 2020 Plaintiff receive an email from Defendant Stroud stating "Unfortunately I needed to cancel the meeting because that time won't work.  I'll be in touch later today".

57. Defendant Stroud did not get in touch with Plaintiff later that day or any other day thereafter per her August 7, 2020 email.

58. On or about August 7, 2020 (2:20 PM) Plaintiff receive a phone call from Defendant Turnbull asserting that he has been in contact with defendant Stroud and their legal team regard plaintiff.

59. On or about August 7, 2020 (2:20 PM) Defendant Turnbull during the call with plaintiff apologize.

60. On or about August 7, 2020 (2:20 PM) Defendant Turnbull during the call with plaintiff apologize for how things have been handled during plaintiff's transition to Defendant Cameca.

61. On or about August 7, 2020 (2:20 PM) Defendant Turnbull during the call with Plaintiff then goes on to state that he wanted to get the record straight regarding his narrative of how Plaintiff's criminal history was discovered.

62. On or about August 7, 2020 (2:20 PM) Defendant Turnbull during the call with Plaintiff asserted that it was not Defendant Stroud that did the internet search but Defendant LeDuigou.

63. On or about August 7, 2020 (2:20 PM) Defendant Turnbull during the call with Plaintiff continues to assert that Defendant Stroud looked at the report from the HireRight and determined Plaintiff's age didn't coincided with my work history and graduation date.

64. Per Defendant Turnbull, Defendant Stroud determined that plaintiff resume had an employment gap and proceeded to contacted Defendant LeDuigou with questions about Plaintiff's interview.

65. Defendant Turnbull asserted Defendant LeDuigou did the internet search on plaintiff and discovers that Plaintiff had been incarcerated.

66. Defendant Turnbull assert that Defendant LeDuigou became upset when he discovered plaintiff had been incarcerated.

67. Defendant Turnbull assert that Defendant LeDuigou informed Defendant Stroud of Plaintiff's criminal history.

68. At all times relevant, Plaintiff allege Defendants have a practice also of screening out all applicant for any position with extensive work history, an indicator that an applicant is undoubtedly over 40 years of age.

69. Defendants used information from HireRight report and took adverse action against Plaintiff

70. Plaintiff did not receive from the Defendants a copy of the HireRight report.

71. Plaintiff was not notified of the specific information from the HireRight report that was allegedly of concern.

72. Plaintiff was not afforded the opportunity to explain the information of concern from the HireRight report before Defendants took adverse actions against Plaintiff.

73. Plaintiff did not receive written notice of the adverse action against him.

74. On or about August 7, 2020 (2:20 PM) Defendant Turnbull during the call with Plaintiff continues throughout the conversation to make it known that he wanted to get the record straight about the chain of events and that Plaintiff's background is public information.

75. On or about August 7, 2020 (2:20 PM) Plaintiff during the call with Defendant Turnbull stated that he, Defendant Stroud, and Defendant LeDuigou have acted discriminatory towards Plaintiff based on race and age.

76. Plaintiff as an applicant verbally reported a complaint with Defendant Turnbull alleging discrimination based in race and age against defendant Stroud and Defendant LeDuigou.

77. On or about August 7, 2020 (2:20 PM) Plaintiff during the call with Defendant Turnbull informed him that he would be filing an EEOC complaint for violation of his rights based on race and age.

78. On or about August 7, 2020 (3:38 PM) Plaintiff receive an email from Defendant Turnbull stating "Thank you for the call today. As discussed, we look forward to you starting your employment with Cameca on Monday, August 10, 2020. I provided you with my email and phone number on the call, but it is below for your convenience. We are excited about you joining the Cameca team."

79. On or about August 8, 2020 (10:36 AM) Plaintiff's respond to Defendant Turnbull by stating "Good morning and thank you for your email yesterday. I would love to be part of the Cameca team. However, after consulting with an attorney (Kathryn Barcroft, Partner & Chair of the Private Sector Employment Division, Solomon Law Firm PLLC) I was advised to ask how can you ensure that I will not be targeted by Fabrice, since he allegedly did the internet search and became upset with his findings, or any other employees. Is Fabrice the only manager that I can work with? Is this the only department I can work in? Moreover, how can you ensure this job offer is in good faith."

80. On or about August 9, 2020 (12:48 PM) Defendant Turnbull responds stating, "We too are looking forward to having you joining the Cameca team. AMETEK maintains a working environment that values diversity and protects the right of each employee to fair and equitable treatment. Further we strive to provide equal employment and advancement opportunities for all qualified people (Reference to our Code of Ethics and Business Conduct Handbook). Any confirmed actions that contradict this policy would be subject to corrective actions. Regarding your references to Fabrice. He has been reminded of the above-mentioned policies and confirmed continued compliance with referenced policies. Our good faith and commitment to the Code of Ethics is evidenced by our decision to move forward to hire you after being informed of your past criminal convictions."

81. On or about August 10, 2020 (6:55 AM) Defendant Turnbull forward the following email to Plaintiff stating; "Just following up this morning to ensure you got my response and to understand whether you intend to report in today."

82. As of August 10, 2020 (7:45 AM) Plaintiff had not receive company phone to fully participation in the orientation to be held at 10:00 AM August 10, 2020.

83. As of August 10, 2020 (7:45 AM) Plaintiff had not receive company computer to fully participation in the orientation to be held at 10:00 AM August 10, 2020.

84. As of August 10, 2020 (7:45 AM) Plaintiff had not receive company email address to fully participation in the orientation to be held at 10:00 AM August 10, 2020.

85. As of August 10, 2020 (7:45 AM) Defendant Stroud was not reprimanded for disclosing personnel records to Defendant LeDuigou.

86. As of August 10, 2020 (7:45 AM) Defendant LeDuigou was not reprimanded for disclosing Plaintiff's personal information to Defendant Stroud.

87. As of August 10, 2020 (7:45 AM) Defendant LeDuigou was not reprimanded for his bias actions toward Plaintiff.

88. As of August 10, 2020 (7:45 AM) Defendant Turnbull was not reprimanded for his interference in Code of Ethics and Business Conduct during plaintiff's transition to Defendant Cameca.

89. As of August 10, 2020 (7:45 AM) Defendant Cameca did not take actions to discourage Defendant Stroud, Defendant LeDuigou, and Defendant Turnbull from continuing violations and discriminatory actions forwards Plaintiff or any other applicants.

90. On or about August 10, 2020 (7:46 AM) Plaintiff's respond to Defendant Turnbull by stating the following: "Good morning. Yes, I did receive your email Saturday, and I understand that you cannot ensure me that I will not be a target of retaliation. You cannot ensure to me that this job offer is in good faith. The only reason you have extended an offer is because that is the advice of your legal team. Mr. Steven a terrible wrong has been done and I'm deeply hurt and offended by it. With that being said, I do not intend to report."

91. On or about August 10, 2020 (7:46 AM) Plaintiff rejects Defendant Cameca' "Bad Faith" job offer.

92. On or about August 10, 2020 (10:35 AM) Defendant Turnbull emailed plaintiff stating the following: "We are disappointed that you have decided not to join Cameca. We were fully committed to you being successful. We wish you the best."

93. At all relevant times, Plaintiff alleges Defendants' job offer was not made in "good faith".

94. At all relevant times, plaintiff alleges Defendants' made a job offer they could not live up too.

**First Cause of Action**

Defendant Cameca' Violation of Title VII's Prohibition against Employment Discrimination Racial Discrimination – Disparate Impact

95. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the complaint as though set forth at length herein.

96. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e seq., and 42 U.S.C. Section1981A, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiff complains of Defendant Cameca violation of Title VII's prohibition against discrimination in employment based upon an employee's race.

97. Plaintiff is an African American male and during his application process with Defendant Cameca was a member of a class protected under Title VII against race-based discrimination by his employer, Defendant Cameca, or by his Manager.

98. at all relevant times, Plaintiff, fully and adequately performed all of the functions, duties and responsibilities of an applicant with Defendant Cameca.

99. As set forth herein, Defendant Cameca have a policy by which it considers applicants with criminal history. Defendant Cameca have a policy to conduct a 10-years background check.

100.     However, it is the common practice of Defendants to determine if applicants have a criminal history in the interview to exclude the applicant from the hiring process.

101.     On information and belief, the Defendant Cameca' hiring process negatively impacts minority employees in general and African-American employees in particular on a company-wide basis in that a lower percentage of minority employers prevail in employment and advancing with the company as compared to white employees.

102.     Defendant Cameca' hiring process negatively impact minority employees in general and African-American employees in particular, at a substantially higher rate than white employees and therefore has a significant discriminatory impact on minority employees.

103.     Plaintiff, as a male applicant of Defendant Cameca, was therefore treated in a
disparate manner and was subjected to Defendant's unfair practices insofar as that he
was treated in an unequal manner and unlike white applicants. Said unfair practices
both restricted Plaintiff in "Good Faith" job offer, employment, wages, and other
benefits because of his race, African American, and further resulted in his denial of
employment.

104.     At all relevant times, Defendant Cameca knew that the discriminatory conduct
complained of herein was without cause as Plaintiff had consistently satisfied and/or
exceeded all the requirements for employment as Field Service Engineer.

105.     As a result of Defendant Cameca' employment procedures and practices,
Plaintiff was unjustly and discriminatorily deprived of equal employment
opportunities because of his race, African-American.

106.     As a further result of Defendant Cameca' above stated actions, Plaintiff has
been, is being and will be deprived of income in the form of wages and prospective
retirement benefits, and other benefits, promotion opportunities and job assignments
due to him as an employee, but denied because of his race and in an amount to be
proven at trial.

107.     The above-named Defendants' conduct was a direct and proximate cause of the
injuries, damages and harm suffered by Plaintiff.

108.     Furthermore, Defendant Cameca intentionally and/or with reckless
indifference, engaged in the above stated discriminatory practices against Plaintiff,
contrary to Plaintiff' federally protected rights as guaranteed to him under Title VII of
the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended and 42
U.S.C. Section 1981.

109.     The intentional and discriminatory conduct of Defendant Cameca complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

110.     As Defendant Cameca engaged in discriminatory employment practices with malice or with reckless indifference to Plaintiff' federally protected rights, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981A.

**Second Cause of Action**

Defendant Cameca' Violation of The Employment Act of 1967 against Employment Age Discrimination – Disparate Impact/Treatment.

111.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the complaint as though set forth at length herein.

112.     This claim is authorized and instituted pursuant to the provisions of Age Discrimination in The Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiff complains of Defendant Cameca violation of The Employment Act of 1967 against discrimination in hiring based upon an applicant's age.

113.     Plaintiff is an African American male (52 Years Old) and during his application process with Defendant Cameca was a member of a class protected under The Employment Act of 1967 against age-based discrimination by potential employer, Defendant Cameca, or by its Manager.

114.    at all relevant times, Plaintiff, fully and adequately performed all of the functions, duties and responsibilities of an applicant with Defendant Cameca.

115.    As set forth herein, Defendant Cameca have a policy by which it considers applicants employment history. Defendant Cameca have a practice by which it excludes applicants with lengthy employment history from the hiring process.

116.    On information and belief, the Defendant Cameca' hiring process negatively treated applicants over 40 on a company-wide basis in that a lower percentage of applicants over 40 prevail in employment and advancing with the company as compared to younger applicants.

117.    Plaintiff, as a male applicant of Defendant Cameca, was therefore treated in an adverse manner and was subjected to Defendant's unfair practices insofar as that he was treated in an unequal manner and unlike younger applicants similarly situated. Said unfair practices both restricted Plaintiff from employment, in his wages and other benefits because of his age, 52, and further resulted in his denial of employment.

118.    At all relevant times, Defendant Cameca knew that the discriminatory conduct complained of herein was without cause as Plaintiff had consistently satisfied and/or exceeded all the requirements for employment as the Field Service Engineer.

119.    As a result of Defendant Cameca' employment procedures and practices, Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities because of his age, 52.

120.    As a further result of Defendant Cameca' above stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments

due to him as an employee, but denied because of his age and in an amount to be proven at trial.

121.     The above-named Defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

122.     Furthermore, Defendant Cameca intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Plaintiff, contrary to Plaintiff' federally protected rights as guaranteed to him under The Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

123.     The intentional and discriminatory conduct of Defendant Cameca complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

124.     As Defendant Cameca engaged in discriminatory employment practices with malice or with reckless indifference to Plaintiff' federally protected rights, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under The Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

**Third Cause of Action**

Defendant Cameca Breach in Contract and /or Promissory Estoppel

125.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

126.     Defendant Cameca promulgated written statements of Code of Ethics and
Business Conduct which it provided and disseminated to all of its employees,
including Plaintiff.

127.     Defendant Cameca represented in writing, that it would treat employees in a
specific, fair and equitable manner. Specifically, Defendant Cameca promulgated a
policy that "All incidents of prohibited discriminatory that are reported will be
investigated. The company will immediately undertake or direct an effective,
thorough, and objective investigation of the discriminatory allegations".

128.     Defendant Cameca further represented, promised and/or implied in writing that
"If the Company determines that prohibited discriminatory has occurred, the Company
will take effective remedial action commensurate with the circumstances".

129.     The customary pattern and practice of Defendant Cameca was to follow its
express and implied employment policies and practices, including the for cause and
complaint procedure policies.

130.     Furthermore, Defendant Cameca represented, promised and/or implied that it
would investigate the allegations of discrimination and misconduct raised by Plaintiff
in a fair, impartial and nondiscriminatory manner.

131.     Defendant Cameca promulgated the "Code of Ethics and Business Conduct",
and made these representations, in such a manner as to manifest its willingness to enter
into a bargain with its employees, including Plaintiff.

132.     Plaintiff assented to Defendant Cameca offer regarding the "Code of Ethics
and Business Conduct" when applying and via oral representations in such a way as to
conclude the bargain.

133.     Defendant Cameca breached its contract with Plaintiff by its failure to follow its own "Code of Ethics and Business Conduct" practices, with regard to the terms and conditions of applicant Plaintiff as set forth herein.

134.     As set forth herein, Defendant Cameca intentionally, willfully and/or maliciously breached its contract with Plaintiff.

135.     Moreover, Defendant Cameca expected and/or should have reasonably expected Plaintiff to rely on the aforementioned "Code of Ethics and Business Conduct" as a commitment by Defendant Cameca to follow and abide by them, including the for cause and complaint procedure policies.

136.     At all relevant times, Plaintiff understood and reasonably relied on the aforementioned "Code of Ethics and Business Conduct" to his detriment and harm, both pecuniary and otherwise.

137.     As set forth herein, Defendant Cameca did not follow the aforementioned employment "Code of Ethics and Business Conduct". Specifically, Plaintiff was denied employment for cause in that Defendant Cameca did not properly investigate the allegations of discrimination and misconduct raised by Plaintiff and Defendant Cameca did not follow its policies, practices and procedures with regard to the discriminatory complaint process.

138.     Substantial injustice can only be avoided by enforcing the promises made by Defendant Cameca to Plaintiff.

139.     Defendant Cameca breach of contract was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff and as set forth herein.

140.     Defendant Cameca conduct was willful and wanton, and Plaintiff is entitled to
punitive/exemplary damages in addition to compensatory damages and other remedies
available under the common law.

**Forth Cause of Action**

Defendant Turnbull, Stroud, and LeDuigou, individually – intentional interference with a
contractual Relationship.

141.     Plaintiff incorporates by reference the allegations set forth in the preceding
paragraphs of the Complaint as though set forth at length herein.

142.     As set forth above and at all relevant times, an express and/or implied
contractual relationship for continued employment existed between Defendant Cameca
and Plaintiff.

143.     At all relevant times, Defendant Turnbull knew of the existence of the
aforementioned contractual relationship between Defendant Cameca and Plaintiff.

144.     As set forth herein, Defendant Turnbull fail to investigate plaintiff's complaint
against defendant Stroud and Defendant LeDuigou, and willfully gave false
statements. By so doing, Defendant Turnbull intentionally induced Defendant Cameca
not to perform its contractual obligations in general, and to deny Plaintiff investigation
into discrimination complaint in particular.

145.     The above-named Defendant's intentional interference with the aforementioned
contractual relationship was based upon their own self-serving motives, objectives and
desires.

146.     At all relevant times, Defendant Turnbull knew of the existence of the aforementioned contractual relation between Defendant Cameca and Plaintiff.

147.     As set forth herein, Defendant Cameca knew or had reason to know that the assertions of Defendant Turnbull were false and motivated by self-interest.

148.     In spite of said knowledge, Defendant Cameca was instrumental in failing to conduct the investigation of Defendant Stroud and Defendant LeDuigou alleged discriminatory actions against Plaintiff.

149.     In addition, Defendant Cameca was instrumental in improperly selecting Defendant Turnbull to investigate Plaintiff's complaint against Defendant Stroud and Defendant LeDuigou and tainting the complaint procedure process so that Plaintiff would not receive it in a fair, impartial and nondiscriminatory manner.

150.     The above-named Defendants' intentional interference with the aforementioned contractual relationship was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

151.     Because the Defendants' conduct towards Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

**Fifth Cause of Action**

Defendant Cameca Breach of Confidentiality of Personnel Records.

152.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the complaint as though set forth at length herein.

153.     This claim is authorized and instituted pursuant to the provisions of The Privacy Act of 1974, as amended, 5 U.S.C. §§ 552a, and The Fair Credit Reporting Act, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiff complains of Defendant Cameca violation of "The Code of Ethics and Business Conduct" against violation of confidentiality of personnel records.

154.     Plaintiff is an African American male and during his application process with Defendant Cameca was a member of a class protected under The Privacy Act of 1974 and The Fair Credit Reporting Act against violation of confidentiality of personnel records by potential employer, Defendant Cameca, or by its Manager.

155.     Defendant Cameca voluntarily contracted, promised and/or agreed and thereby assumed a legal obligation of "Confidentiality of Personnel Records" in its performance or enforcement of its "Code of Ethics and Business Conduct" with its job offer to Plaintiff.

156.     At all relevant times, Plaintiff, fully and adequately performed all of the functions, duties and responsibilities of an applicant with Defendant Cameca.

157.     As set forth herein, Defendant Cameca have a practice by which it discloses unrelated and irrelevant personnel records of Plaintiff to his potential managers. Defendant Cameca have a practice by which it shares applicants records with unrelated employees.

158.     On information and belief, the Defendant Cameca' record management system fails to protect the privacy of applicants.

159.     Plaintiff, as an applicant of Defendant Cameca, was therefore treated in an adverse manner and was subjected to Defendant's unfair practices insofar as that he was treated in an unequal manner. Said unfair practices both restricted Plaintiff from

employment, in his wages and other benefits because of his race, and further resulted in his denial of employment.

160.    At all relevant times, Defendant Cameca knew that the unfair conduct complained of herein was without cause as Plaintiff had consistently satisfied and/or exceeded all the requirements for employment as the Field Service Engineer.

161.    As a result of Defendant Cameca' record management system, Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities.

162.    As a further result of Defendant Cameca' above stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of his age and in an amount to be proven at trial.

163.    The above-named Defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

164.    Furthermore, Defendant Cameca intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Plaintiff, contrary to Plaintiff' federally protected rights as guaranteed to him under The Privacy Act of 1974, as amended, 5 U.S.C. §§ 552a, and The Fair Credit Reporting Act.

165.    The intentional and discriminatory conduct of Defendant Cameca complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

166.    As Defendant Cameca engaged in discriminatory employment practices with malice or with reckless indifference to Plaintiff' federally protected rights, Plaintiff is

entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under The Privacy Act of 1974, as amended, 5 U.S.C. §§ 552a, and The Fair Credit Reporting Act.

**Sixth Cause of Action**

Defendant Cameca' Violation of The Fair Credit Reporting Act.

167.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the complaint as though set forth at length herein.

168.     This claim is authorized and instituted pursuant to the provisions of The Fair Credit Reporting Act, 15 U.S.C. section 1681-1681x, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiff complains of Defendant Cameca violation of The Fair Credit Reporting Act against violating the four-step process.

169.     Plaintiff was an applicant and during his application process with Defendant Cameca was a member of a class protected under The Fair Credit Reporting Act against violation of the Pre-Adverse Action Protocol and the Adverse Action Protocol by potential employer, Defendant Cameca, or by its Manager.

170.     At all relevant times, Plaintiff, fully and adequately performed all of the functions, duties and responsibilities of an applicant with Defendant Cameca.

171.     As set forth herein, Defendant Cameca have requested an investigative consumer report about Plaintiff from HireRight, LLC ("HireRight"), a consumer reporting agency, in connection with Plaintiff application for employment. Defendant Cameca have a practice by which it uses information from a consumer report to take an adverse action.

172.    On information and belief, the Defendant Cameca' hiring process failed to provide Plaintiff with a copy of the report which had the alleged discrepancies and/or conflict, failed to give Plaintiff an opportunity to respond to the alleged discrepancies and/or conflict, and failed to provide the Plaintiff with written notice of the adverse action taken against him.

173.    Plaintiff an applicant of Defendant Cameca, was therefore not informed in writing the specific conflicting information that caused the adverse action. Said unfair practices both restricted Plaintiff from employment, in his wages and other benefits because Plaintiff was not able to properly respond to the allegedly conflicting information which he believe he could have corrected any discrepancies and/or conflict and possibly prevent any adverse action, and further resulted in his denial of employment.

174.    At all relevant times, Defendant Cameca knew that the discriminatory conduct complained of herein was without cause as Plaintiff had consistently satisfied and/or exceeded all the requirements for employment as the Field Service Engineer.

175.    As a result of Defendant Cameca' employment procedures and practices, Plaintiff was unjustly and discriminatorily deprived of equal employment opportunities because of due process was not afforded to Plaintiff.

176.    As a further result of Defendant Cameca' above stated actions, Plaintiff has been, is being and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of his age and in an amount to be proven at trial.

177.    The above-named Defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

178.     Furthermore, Defendant Cameca intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against Plaintiff, contrary to Plaintiff' federally protected rights as guaranteed to him under The Fair Credit Reporting Act.

179.     The intentional and discriminatory conduct of Defendant Cameca complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

180.     As Defendant Cameca engaged in discriminatory employment practices with malice or with reckless indifference to Plaintiff' federally protected rights, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under The Fair Credit Reporting Act.

**Seventh Cause of Action**

Defendant Cameca Breach of Good Faith Job Offer

181.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

182.     Defendant Cameca owed and continues to owe a duty of care to their employees and applicants such as Plaintiff, to act in the best interest of their employees.

183.     Defendant Cameca had a further duty to ensure honesty in fact, in the conduct or transaction concerned and the observance of reasonable business standards of fair dealing.

184.    Defendant Cameca voluntarily contracted, promised and/or agreed and thereby assumed a legal obligation of "Good Faith" in its performance or enforcement of its "Code of Ethics and Business Conduct" with its job offer to Plaintiff.

185.    Defendant Cameca breached its duty of care owed to Plaintiff as stated clearly in their policy "The Code of Ethics and Business Conduct" by and through the following acts and/or omissions, which include but are not limited to:

   a.   Failing to properly maintain confidentiality of personnel records;

   b.   Failing to properly and adequately train its managerial employees, including Defendant Turnbull, to properly respond to complaints of discrimination in hiring, and misconduct;

   c.   Failing to properly and adequately train its managerial employees, including Defendant Turnbull, to prohibit discriminatory employment practices, including discrimination based on race, and/or age;

   d.   Failing to carefully and diligently supervise its employees, including defendant Turnbull, to prevent them from improperly handling complaints of discrimination in Hiring, and misconduct and/or conducting the investigation in a non-discriminatory manner;

   e.   Failing to implement and/or take appropriate remedial action once it knew or should have known that its employees were mishandling complaints of discrimination in hiring, and misconduct and/or conducting the investigation in a discriminatory manner; and

   f.   Failing to conduct a reasonable, proper and appropriate investigation;

g.   Failing to abide by its own express and implied employment policies and procedures;

h.   Failing to exercise reasonable care under the circumstances.

186.    The above-named Defendants job offer was predicated on "Bad Faith" a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

187.    Because the Defendants' conduct toward Plaintiff was for dishonest, discriminatory and malicious purpose, Plaintiffs entitled to punitive exemplary damages in addition to compensatory damages, and other remedies available under the common law.

**Eighth Cause of Action**

Defendant Cameca, Defendant Turnbull, Defendant Stroud and Defendant LeDuigou individually and in their Capacity as Manager – Negligence

188.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

189.    Defendant Cameca owed and continues to owe a duty of care to their employees and applicants such as Plaintiff, to prevent their employees from acting in any way to harm co-employees.

190.    Defendant Cameca had a duty to ensure that personnel records were handled and disposed in the proper manner.

191.    Defendant Cameca had a further duty to ensure that complaints of discrimination in hiring, and misconduct were properly handled, and the investigation conducted in a fair, impartial and/or non-discriminatory manner.

192.     Defendant Cameca voluntarily contracted, promised and/or agreed and thereby assumed a legal duty to ensure that complaints of discrimination in hiring, and misconduct were properly handled, and the investigation conducted in a fair, impartial and/or non-discriminatory manner, pursuant to its express employment policies.

193.     Defendant Cameca breached its duty of care owed to Plaintiff by and through the following acts and/or omissions, which include but are not limited to:

a.   Failing to properly and adequately train its managerial employees, including Defendant Turnbull, to properly maintain applicants' and employees' personnel records;

b.   Failing to properly and adequately train its managerial employees, including Defendant Turnbull, to properly respond to complaints of discrimination in hiring, and misconduct;

c.   Failing to properly and adequately train its managerial employees, including Defendant Turnbull, to prohibit discriminatory employment practices, including discrimination based on race, and/or age;

d.   Failing to carefully and diligently supervise its employees, including defendant Turnbull, to prevent them from improperly handling complaints of discrimination in Hiring, and misconduct and/or conducting the investigation in a non-discriminatory manner;

e.   Failing to implement and/or take appropriate remedial action once it knew or should have known that its employees were mishandling complaints of discrimination in hiring, and misconduct and/or conducting the investigation in a discriminatory manner; and

    f.   Failing to conduct a reasonable, proper and appropriate investigation;

    g.   Failing to abide by its own express and implied employment policies and procedures;

    h.   Failing to exercise reasonable care under the circumstances.

194.    The above-named Defendants conduct was a direct and proximate cause of the injuries, damages and harm suffered by Plaintiff.

195.    Because the Defendants' conduct toward Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiffs entitled to punitive exemplary damages in addition to compensatory damages.

**Nineth Cause of Action**

All Defendants – Intentional infliction of Emotional Distress

196.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

197.    As set forth herein, during his application process with Defendant Cameca, Plaintiff was subjected to a pattern of discrimination and misconduct in the workplace based on his race, and age.

198.    At all relevant times, the above-named Defendants knew or should have known that Defendant Stroud and Defendant LeDuigou acted discriminatory towards Plaintiff. Despite said knowledge, Defendants ignored the evidence and attempted to silence, discourage, and humiliate Plaintiff from a "Good Faith" job offer.

199.     At all relevant times, the above-named Defendants knew or should have known that Defendant Turnbull's narrative of events against Plaintiff were false. Despite said knowledge, Defendants ignored the evidence and attempted to silence, discourage, and humiliate Plaintiff from a "Good Faith" job offer.

200.     Despite meeting the requirements for the field Service Engineering position plaintiff was denied employment.

201.     The above-named Defendants, by denying Plaintiff employment and failing to investigate allegation of discrimination, and making a job offer in "Bad Faith", acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to Plaintiff.

202.     The above-named Defendants' actions towards Plaintiff as set forth above are evidence of a pattern of race discrimination which further constitutes extreme and outrageous conduct.

203.     The conduct of the above-named Defendants was outrageous in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

204.     The extreme and outrageous conduct of the above-named Defendants toward Plaintiff was done in a willful and wanton manner and constituted a disregard for the rights and well-being of Plaintiff.

205.     As a direct and proximate result of the above-named Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, depression, humiliation, embarrassment, anger, and change in physical appearance and demeanor.

206.     Because the Defendants' extreme and outrageous conduct toward Plaintiff was improperly motivated, and was intentional, willful and wanton, Plaintiff is entitled to punitive/exemplary damages in addition to compensatory damages.

**Additional Parties and/or Claims**

207.     Plaintiff respectfully requests leave to amend his Complaint to add additional parties and/or claims upon completing initial discovery. It may be necessary to name agents or employees of the above-named Defendants, and to add additional claims such as intentional discrimination based on race pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., and 42 U.S.C. Section 1981; intentional discrimination based on age pursuant to the Age Discrimination in Employment Act, 29 U.S.C. Section 620 et seq, conspiracy, malicious prosecution and negligent hiring if additional investigation and discovery elicits information that supports such claims.

**Damages**

208.     The conduct of the above - named Defendants, as set forth herein, in violating Plaintiff' rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section (s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; and The Fair Credit Reporting Act of 19xx, 15 U.S.C. Section 1681-1681x, caused injuries, damages and harm to Plaintiff, including, but not limited to, past and future economic loss, past and future non-economic losses, including emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

Wherefore, Plaintiff request judgment and damages against Defendants, Cameca, Steven Turnbull, Annie Stroud, Fabrice LeDuigou, jointly, severally and/or individually, as follows:

      a.  A declaration judgment that Defendants have violated Plaintiff' right to be free from discrimination in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A; Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634; and The Fair Credit Reporting Act of 19xx, 15 U.S.C. Section 1681-1681x.

      b.  Enter an injunction ordering Defendant Cameca to make Plaintiff whole with full back pay, or in the alternative, front pay;

      c.  An award to Plaint for compensatory damages in the amount to be shown at trial for past and future economic and non-economic losses, including emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

      d.  An award to Plaintiff for exemplary and/or punitive damages in the amount to be shown at trial;

      e.  An award to Plaintiff of interest on any awards at the highest rate allowed by law; and

      f.  Such other and further relief as this Court deems just and appropriate.

PLAINTIFF REQUEST TRIAL TO A JURY ON ALL CLAIMS ALLOWED BY LAW

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted this 25th day September 2020

Najiy-Ullah 'Aziyz, Pro Se

22 Pinewood Dr.

Glenville, NY 12302

(470) 334-3221

Najiy03@icloud.com